UNITED STATES COURT OF APPEALS
For the Fifth Circuit

No. 95-60308

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CLAUDE MORMON; REGINALD E. GREEN; HORACE LEE
LEE COLONEL; RALPH GREEN also known as Chuck Green,

Defendants-Appellants.

Appeal from the United States District Court
For the Northern District of Mississippi
(1:94-CR-001)

December 31, 1996

Before REYNALDO G. GARZA, JOLLY, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Appellants/Defendants Claude Mormon, Reginald E. Green, Horace Lee Colonel, and Ralph Green, also known as Chuck Green, were convicted by a jury of conspiracy to distribute and to possess with

---

[*]Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

1

intent to distribute in excess of 50 grams of cocaine base between March 1992 and November 1993, in violation of 21 U.S.C. §§ 841 and 846. Reginald Green was also convicted of unlawfully engaging in a continuing criminal enterprise during the same period, in violation of 21 U.S.C. § 848.

Claude Mormon was sentenced to 339 months imprisonment followed by five years of supervised release. He was fined $1,000 and charged an assessment of $50. Reginald E. Green was sentenced to 384 months imprisonment followed by five years of supervised release. He was fined $50,000 and charged an assessment of $50. Horace Lee Colonel was sentenced to 240 months imprisonment followed by five years of supervised release. He was fined $1,500 and charged an assessment of $100. Ralph Green was sentenced to 292 months imprisonment followed by five years of supervised release. He was fined $1,000 and charged an assessment of $50. On appeal, Appellants raise multiple points of error. For the following reasons, the convictions and sentences of Appellants are affirmed.

### BACKGROUND

Reginald Green ran a narcotics distribution operation based in San Antonio, Texas. Green's brother, Ralph Green, a/k/a Chuck Green, worked in Reginald's liquor store in San Antonio and assisted Reginald by distributing crack cocaine ("crack") and

accepting drug proceeds for Reginald.  Horace Colonel distributed crack supplied by the Greens in Florida and North Carolina through street dealers who worked for him.  Claude Mormon was employed by Colonel and other co-conspirators to transport supplies of crack from Texas to Florida and other locations.

Reginald Green ran this operation from March 1992 to November 1993.  In short, Reginald would "front" crack cocaine to various individuals and those individuals would distribute the drug and return the profits to Reginald.  Reginald would then resupply these distributors with more crack and await the profits.  This cycle continued and eventually led to a pyramid of employees, all of whom worked for Reginald or one of the other named Appellants.

Eventually, some of the lower-level distributors were arrested and charged with federal drug and firearms violations.  Individuals such as Demarco Morgan, Sam Hall, Raymond Rowe, and Raymond Kinsey, pleaded guilty to these charges and agreed to cooperate with law enforcement authorities with regard to apprehending the Appellants. Ultimately, search warrants were issued and Appellants were arrested.

On January 28, 1994, a federal grand jury in the Northern District of Mississippi returned an eight count indictment against Reginald Green, Ralph Green, Horace Colonel, and Claude Mormon. Count One charged all four Defendants with conspiracy to distribute and to possess with intent to distribute in excess of 50 grams of cocaine base between March 1992 and November 1993, in violation of

21 U.S.C. §§ 841 and 846.  Count Two charged Reginald Green with unlawfully engaging in a continuing criminal enterprise during the same period, in violation of 21 U.S.C. § 848.  Counts Three, Four, Five, Seven, and Eight charged Ralph Green with use of a telephone to facilitate a conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 843.  Count Six charged Reginald Green with use of a telephone to facilitate a conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 843.

Trial by jury began on March 6, 1995.  At trial, government witnesses, including Morgan, Hall, Kinsey, and Rowe, each testified about their own participation in the conspiracy, as well as that of the Defendants.  Upon the close of the government's case-in-chief, the district court granted Defendants' motions to dismiss Counts Three through Eight.  The jury returned verdicts of guilty as to all Defendants on Count One, and as to Reginald Green on Count Two. Defendants now appeal.

## DISCUSSION

Appellants raise several points of error.  We will address each point of error in turn.[1]

---

[1]  The appellate brief of each Defendant expressly adopts by reference the arguments presented in the briefs of his co-defendants. Rule 28(i) of the Federal Rules of Appellate Procedure provides for such adoption by reference in cases involving multiple appellants.  We have previously held, however, that an appellant may not raise fact specific challenges to his own conviction or sentence -- such as sufficiency-of-the-evidence challenges or challenges to the application of the sentencing guidelines -- by

4

## 1. Admission of Recorded Telephone Conversations

Defendants argue that the district court erred when it admitted into evidence certain post-arrest taped telephone conversations between Ralph Green, Reginald Green, and government witness Demarco Morgan. In these conversations, the parties discuss, *inter alia*: their likely sentences, their need to use "safe phones" or alternative communication methods to avoid government monitoring, and whether certain Defendants are "talking" to the government. Defendants argue that such statements are inadmissible hearsay because they do not constitute statements of a co-conspirator during the course and in furtherance of the conspiracy.[2]

For a statement to be admissible under this rule, "[t]here must be evidence that there was a conspiracy involving the

---

merely referring to similar challenges in another appellant's brief. **United States v. Alix**, 86 F.3d 429, 434 n.2 (5th Cir. 1996), citing, **United States v. Harris**, 932 F.2d 1529, 1533 (5th Cir.), <u>cert denied</u>, 112 S. Ct. 270, and <u>cert denied</u>, 112 S. Ct. 324 (1991), and <u>cert denied</u>, 112 S. Ct. 914 (1992). Accordingly, to the extent that the issues raised by each Defendant have been properly adopted by the other Defendants, our holding as to each issue may be deemed to be our holding as to all Defendants. **Alix**, 86 F.3d at 434 n.2.

[2] Rule 801(d)(2)(E) of the Federal Rules of Evidence states that a "statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E).

declarant and the nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy." *United States v. Fragoso*, 978 F.2d 896, 899 (5th Cir. 1992) (internal citations omitted) (citing, *Bourjaily v. United States*, 107 S. Ct. 2775, 2778 (1987)). Whether statements are admissible under this rule is a preliminary question that shall be determined by the court. FED. R. EVID. 104(a); *Fragoso*, 978 F.2d at 899. "When preliminary facts to admissibility of coconspirator testimony under Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence." *Fragoso*, 978 F.2d at 899. Thus, the Government must establish by a preponderance of the evidence that the declarant and the defendant were involved in a conspiracy and that the statements were made during and in furtherance of the conspiracy. *Bourjaily v. United States*, 107 S. Ct. 2775, 2778-709 (1987). "[W]e accept all credibility choices that support the jury's verdict, letting jurors use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence...." *United States v. Steen*, 55 F.3d 1022, 1031 (5th Cir.), cert. denied, 116 S. Ct. 577 (1995) (internal citations omitted).

"[T]he failure to explicitly discuss drugs or drug-trafficking does not automatically indicate that the conversations were not in furtherance of the conspiracy. *United States v. Broussard*, 80 F.3d

6

1025, 1039 (5th Cir.), <u>cert. denied</u>, 117 S. Ct. 264 (1996). "Indeed, 'in furtherance of a conspiracy' is not to be construed too strictly lest the purpose of the exception be defeated." *Id.* "We have shunned an overly literal interpretation of this [phrase]." *Id.* (internal citations omitted).

"Given that concealment is often a necessary part of a conspiracy, statements made to aid the concealment are made in furtherance of the conspiracy." *Id.* A statement emphasizing the need to use 'safe' phones "clearly indicates" a desire that the conspiracy be kept concealed. *Id.* The alleged hearsay statements may be considered in making the Rule 801(d)(2)(E) determination. *Id*. at 2781.

Over the objections of Appellants, the district court conditionally admitted the taped telephone conversations. At the close of the government's case-in-chief, the district court determined that the government had satisfied its threshold burden of demonstrating, by a preponderance of the evidence, that a conspiracy existed.

We must interpret the evidence supporting the district court's determination in the light most favorable to the government. *United States v. Villareall*, 764 F.2d 1048, 1050 (5th Cir.), <u>cert. denied</u>, 106 S. Ct. 272 (1985). After granting such deference and after thoroughly reviewing the record, including the record citations made by both the government and the Appellants, we hold

7

that the independent evidence offered by the government supports the trial court's determinations.    Accordingly, out-of-court statements made by Ralph Green, Reginald Green, and Demarco Morgan were properly admitted into evidence.

## 2.   *Constitutionality of Sentencing Guidelines*

Acknowledging that this Court has rejected similar arguments in the past,[3] Appellants, nevertheless, argue that their respective sentences violate their equal protection and due process rights, and constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution.    Specifically, Appellants argue that the Sentencing Guidelines unconstitutionally utilize a 100-1 sentencing ratio for those convicted of crimes involving crack cocaine versus powder cocaine.    Appellants argue that the penalty scheme of U.S.S.G. § 2D1.1 disproportionately burdens African-Americans and that Congress enacted the scheme with the intent to discriminate on the basis of race.    In support of their position, Appellants cite a recommendation by the United States Sentencing Commission to reduce or eliminate the sentencing disparity between cocaine and crack.[4]    While Appellants acknowledge

---

[3]  This Court appreciates the candidness of Mormon's counsel in appropriately acknowledging unfavorable precedent.

[4]   In 1994, Congress directed the Sentencing Commission to examine the federal sentencing scheme and to provide recommendations for retention or modification of the policy.   The Sentencing Commission's report, transmitted to Congress on February 28, 1995, concludes that the 100 to one ratio is too great, and

8

that this recommendation was ultimately rejected by Congress, Pub. Law 104-38, they argue that Congress' failure to adopt the Commission's recommendations evinces Congress' intent to discriminate against African-Americans.

We review the district court's legal conclusions *de novo*, and will uphold the district court's factual finding if it is supported by substantial evidence. ***United States v. Cherry***, 50 F.3d 338, 342 (5th Cir. 1995).

In ***Cherry***, we noted that crack cocaine is a different drug from powder cocaine, and that Congress need not treat dissimilar drugs similarly. ***Cherry***, 50 F.3d 338 at 344 (noting, *inter alia*, that crack cocaine is more addictive). We also held that Congress' choice to create disparate sentences for crack cocaine and powder cocaine,

> is rationally related to Congress's legitimate interest in protecting the general welfare. The 100 to one ratio is extreme, but it is not the province of this Court to second-guess Congress's chosen penalty. That is a discretionary legislative judgment for Congress and the

---

that the penalty scheme should be amended. The Commission took into account the "inescapable conclusion" that African-Americans comprise the largest percentage of those affected by the penalties associated with crack cocaine, and stated that, in the months ahead, it planned to refine the drug guidelines to account for the harms related to cocaine without the "difficulties associated with an automatic 100-to-1 ratio". U.S. Sentencing Commission, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY at xi, xv (1995). ***United States v. Cherry***, 50 F.3d 338, 344 n.21 (5th Cir. 1995).

9

> Sentencing Commission to make. Our review is limited to whether the penalty has a rational basis. We conclude that it does....

*Cherry*, 50 F.3d at 344. Accordingly, we find Defendants' arguments unpersuasive. No error was committed.


### 3. Failure to Strike Jurors 19 and 31.

Appellants argue that the district court erred when it failed to strike Jurors No. 19 and 31 for cause. Appellants contend that this error violated their Constitutional rights to due process and trial by an impartial jury. After reviewing the transcript of the proceedings, we find no error.

During voir dire, counsel for Reginald Green asked a series of questions concerning any potential biases which the potential jurors might have concerning the drug-related nature of the case and the race of the Defendants. Among the questions asked by counsel were: "Do any of you all right now have a perception that because this is a drug offense that is being charged and because the defendants are African American that might insinuate guilt more so than if they were of another race?" and "So would anyone think that any of the four defendants would be more likely to be guilty of the charged offense because they are African Americans?" In response to these questions and others, Juror 19 stood and engaged counsel in the following dialogue:

> **JUROR 19**: How did you determine that they are African American:

10

**COUNSEL**: Sir?

**JUROR 19**: How did you determine that?

**COUNSEL**: The defendants?

**JUROR 19**: I am trying to make a point here. You have them stand up and we looked at them and you said African American. How did you determine that they are African American?

**COUNSEL**: Let me think of a nice way to respond. I am familiar, of course, with Reginald Green because he is my client, so I know he is African American.

**JUROR 19**: How do you know?

**COUNSEL**: And his brother is Chuck Green, so I know he is African American.

**JUROR 19**: How do you know?

**COUNSEL**: I talked to the attorneys for Will Ford -- for Claude Mormon and Horace Colonel and I know that they know that their clients are African American, so I know that is something in [sic] true in this case.

**JUROR 19**: But that is pedigree, there is no way of proof.

**COUNSEL**: Thank you, sir, for your comment.

**JUROR 19**: My point is, we are just going by the way they look, right?

**COUNSEL**: Yes, sir.

**JUROR 19**: So they are American.

**COUNSEL**: I am going -- Sir, I don't want to argue with you, but I do want to say that I appreciate your comment. Thank you very much.

Based upon this exchange, counsel for Defendant Mormon sought to have Juror 19 excused for cause, arguing that the dialogue was

11

"bizarre" and that Juror 19 was "hostile with regard to race." Determining that Juror 19's responses and demeanor did not indicate bias or prejudice, the district court held:

> [H]e obviously has a different perception or conception of the term African American than the way it was being asked about by [Counsel], but that in itself does not show he is a racist or has racial prejudice. When he responded to all of your questions about whether he would be prejudiced in any way because of race, he said no, so that challenge will be denied.[5]

"Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'min v. Virginia*, 111 S. Ct. 1899, 1908 (1991). "Because the obligation to empanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the voir dire." *Id*. at 1904. "Despite its importance, the adequacy of voir dire is not easily subject to appellate review." *Id*. "The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to

---

[5]    The transcript shows that Reginald Green's counsel did not directly ask Juror 19 if he would be prejudiced by Defendants' race.  However, on voir dire, the jury pool was collectively asked, on several occasions, if any member maintained any prejudice against Defendants on the basis of their race.  No potential juror, including Juror 19, responded in the affirmative.

12

questions." *Id*. at 1904. Ultimately, the trial court must determine whether the juror is to be believed when he says that he has not formed an opinion about the case. *Id*. at 1905.

We review a district court's ruling as to juror impartiality for abuse of discretion. *United States v. Mendoza-Burciaga*, 981 F.2d 192, 197-198 (5th Cir. 1992), cert. denied, 114 S. Ct. 356 (1993). In this case, the district court determined that Juror 19 did not possess a prejudice which would cause him to form an opinion about the case. The district court based its decision not only upon the content of the exchange between Juror 19 and counsel, but also upon Juror 19's demeanor, manner, and tone. After reviewing the record, we find no basis upon which we can conclude that the district court committed error as to Juror 19.

In the alternative, we hold that any error was harmless. Defendants exercised one of their preemptory challenges to remove Juror 19. Accordingly, Juror 19 did not serve on the jury. Nevertheless, Defendants argue that the district court's alleged error in not striking Juror 19 for cause resulted in Defendants needing to use one of their preemptory challenges to strike Juror 19, thereby effectively reducing by one the number of challenges available to Defendants. For the following reasons, Defendants' argument fails.

The standard by which we determine the impact of an increase or decrease in the number of a party's peremptory challenges as a

13

result of a court's erroneous ruling on a challenge for cause is set forth in *United States v. Prati*, 861 F.2d 82, 87 (5th Cir. 1988). Citing the Supreme Court decision in *Ross v. Oklahoma*, 108 S. Ct. 2273 (1988), we made clear that the pertinent inquiry is whether the jurors who actually sat were impartial as required by the Sixth Amendment. *Prati*, 861 F.2d at 87. We rejected the notion that the loss of a peremptory challenge constitutes a violation of a constitutional right to an impartial jury. Although peremptory challenges are a means to an end of achieving an impartial jury, peremptory challenges are not of constitutional dimension. Therefore, although the alleged improper removal of the venire member may have altered the ultimate composition of the panel, this is not a ground upon which the defendants' convictions can be reversed. *Prati*, 861 F.2d at 87.

Next, Defendants argue that the district court abused its discretion by refusing to strike Juror No. 31 for cause. Juror No. 31 stated that she had an uncle in law enforcement. When counsel for Reginald Green asked Juror 31 if that relationship would effect her ability to be "a fair and impartial juror," Juror 31 responded, "No ma'am." Defendants offer no evidence to show that Juror 31 would be a partial or biased juror. In essence, Defendants invite this Court to hold that relatives of law enforcement officials are, *per se*, incapable of making fair determinations. We decline Defendants' invitation. Based upon the record before us, we hold

14

that Defendants have not shown that the district court abused its discretion by refusing to strike Juror 31 for cause.

### 4. *Double Jeopardy*

On February 3, 1994, two vehicles owned by Reginald Green were seized by the government pursuant to a search warrant executed at Reginald Green's residence. On April 15, 1994, both vehicles were administratively forfeited to the government subsequent to a summary forfeiture proceeding. A *lis pendens* was filed with the deed records of Bexar County, San Antonio, Texas, attaching both the residence of Reginald Green, as well as, a piece of rental property which he owned. The *lis pendens* prohibits the sale or transfer of these properties pending the outcome of Reginald Greens' appeal before this Court.

Reginald Green moved the district court to dismiss the criminal charges against him on the grounds that the summary forfeiture of his vehicles, as well as the pending forfeiture of his real property, constitutes punishment for his crime. Reginald Green argues that the sentence which he received for his criminal conviction constitutes additional punishment in violation of the double jeopardy clause of the Fifth and Eighth Amendments to the Constitution. We disagree.

15

The double jeopardy clause of the Fifth Amendment to the Constitution states that "[n]o person shall...be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. CONST. AMEND. V. Because double jeopardy raises a legal issue of constitutional dimensions, we review *de novo* the denial of a motion to dismiss on double jeopardy grounds. ***United States v. Arreola-Ramos***, 60 F.3d 188, 191 (5th Cir. 1995). The Supreme Court has interpreted the Double Jeopardy Clause to shield citizens from both multiple prosecutions and multiple punishments for the same offense. ***Id***. at 191-192. Thus, only when a civil forfeiture constitutes "punishment" can jeopardy attach. ***Id***. at 192. In ***Arreola-Ramos***, we held that,

> a summary forfeiture, by definition, can never serve as a jeopardy component of a double jeopardy motion. In summary forfeiture proceedings, there is no trial, there are no parties, and no one is punished. Absent a trial, a party, and a punishment, jeopardy can never attach. As Arreola did not appear and contest the forfeiture, he was never in jeopardy. Without former jeopardy, double jeopardy cannot arise. We agree with the district court: As Arreola failed to establish former jeopardy, he necessarily failed to establish even the possibility of double jeopardy.

***Arreola-Ramos***, 60 F.3d at 192-193. See also, ***United States v. Morgan***, 84 F.3d 765, 767 (5th Cir. 1996) ("When a defendant fails to judicially contest a civil forfeiture action by filing a 'claim', the defendant is not subject to former jeopardy in the forfeiture action, and therefore, by definition, the government's

subsequent prosecution of the defendant does not constitute double jeopardy."). Additionally, an appellant has the burden of directing the court to all relevant evidence in support of his argument. See, *United States v. Gonzalez*, 76 F.3d 1339, 1342 (5th Cir. 1996). If he fails to provide the necessary record for review, we need not consider the issue on appeal. *Id*. at 1342.

Because Reginald Green fails to offer any evidence showing that he appeared and contested the forfeiture of his vehicles, he failed to establish former jeopardy. Having failed to establish former jeopardy, he cannot now claim double jeopardy. Furthermore, Reginald Green has failed to direct this Court to any record evidence in support of his argument that the *lis pendens* filed against his real properties constitutes a punishment. For these reasons, we hold that Reginald Green has not shown that the district court erred in denying his motion to dismiss the criminal charges and sentence based upon double jeopardy. No error was committed.

**5. *Validity of Search Warrant***

Reginald Green argues that the district court erred in not granting his motion to suppress evidence obtained from a search of his home because, he argues, the search warrants were overly broad and failed to specify with particularity the items to be searched.

The Fourth Amendment prohibits the issuance of general

17

warrants which allow officials to burrow through a person's possessions looking for any evidence of a crime. *United States v. Kimbrough*, 69 F.3d 723, 727 (5th Cir. 1995), cert. denied, 116 S. Ct. 1547 (1996), citing, *Andresen v. Maryland*, 96 S. Ct. 2737, 2748 (1976). A warrant must particularly describe the place to be searched and the person or things to be seized. *Id.; United States v. Layne*, 43 F.3d 127, 132 (5th Cir.), cert. denied, 115 S. Ct. 1722 (1995). In testing whether a specific warrant meets the particularity requirement, a court must ask whether an executing officer reading the description in the warrant would reasonably know what items are to be seized. *Kimbrough*, 69 F.3d at 727. "In identifying the property to be seized, the agents are required to interpret the warrant, but are not obliged to interpret it narrowly." *United States v. Hill*, 19 F.3d 984, 987 (5th Cir.) (internal citations omitted), cert. denied, 115 S. Ct. 320 (1994). This test for particularity may be made with supporting affidavits if the warrant expressly refers to the affidavits. *Layne*, 43 F.3d at 132. In circumstances where detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized. *Kimbrough*, 69 F.3d at 727. The ultimate determination of reasonableness of the search is a conclusion of law which is reviewed *de novo*. *United States v. Capote-Capote*, 946 F.2d 1100, 1102 (5th Cir. 1991), cert denied, 112 S. Ct. 2278 (1992).

18

Several search warrants were issued which collectively authorized a search of the following locations:

1. The residence of REGINALD GREEN, a dwelling house at 8848 Willmon, San Antonio, Texas;

2. The business of REGINALD GREEN, CRESTWAY LIQUOR STORE, 5121 Crestway Drive, San Antonio, Texas;

3. The house and premises located at 1203 Hays Street, San Antonio, Texas.

4. A 1990 Nissan Pathfinder registered to Reginald Green bearing Texas License CPY90L, VIN: JN8HD17YXLW234841.

5. A 1987 Mercedes Benz registered to Reginald Green bearing Texas License 877RWW, VIN: WDBEA30D6HA570225.

Each search warrant referenced a 25-page affidavit by Federal Drug Enforcement Agency Special Agent Morgan Thompson, which described the items to be searched as follows:

(1) Controlled Substances, including cocaine, as well as materials and paraphernalia used in the weighing, cutting (diluting), packaging, concealing and distributing controlled substances, including cocaine;

(2) Books, records, receipts, notes, ledgers, bank records, money orders, and/or papers relating to, the transportation, importation, sale, and/or distribution of controlled substances, including cocaine, and/or records relating to the receipt and/or disposition of the proceeds from the transportation, importation, sale, and/or distribution of controlled substances, including cocaine;

(3) Currency, financial instruments, precious metals, and/or other proceeds of the transportation, importation, sale, and/or distribution of controlled substances, including cocaine, and records related to the laundering,

19

secreting and/or distribution of monies related to illegal cocaine trafficking activities;

(4) Telephone and address books, telephone toll records, or papers which reflect names, addresses and/or telephone numbers of individuals associated in the illegal transportation, importation, sale, and/or distribution of controlled substances, including cocaine;

(5) Firearms and ammunition; and

(6) Documents reflecting dominion and control of properties used to illegally distribute, transport, store, and conceal illegal controlled substances and the proceeds of the transportation, importation, sale, and or distribution of controlled substances, including cocaine.

Reginald Green argues that this language was unconstitutionally overbroad such as to "authorize [the government] to seize what they wished rather than requiring them to reasonably ascertain and identify the items authorized to be seized." We disagree. The language in the warrants, as described through the affidavit, properly limited the executing officers' discretion; an executing officer reading the description in the warrant would reasonably know what items were to be seized. Accordingly, we find this contention to be without merit.

## 6. *Sufficiency of the Evidence*

The following issues constitute challenges based upon the sufficiency of the evidence. First, Morman argues that the evidence does not support the district court's refusal to grant him

a "minor participant" two-level reduction in the sentencing offense level. "[A] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." **United States v. Gaytan**, 74 F.3d 545, 561 (5th Cir. 1996); U.S.S.G. § 3B1.2(b), comment (n.3). "[A] district court should not make an adjustment for minor participation merely because the defendant's participation is somewhat less than the other participants'; to warrant such a downward adjustment, the defendant's participation must be enough less so that he at best was peripheral to the advancement of the illicit activity." **United States v. Castillo**, 77 F.3d 1480, 1494 (5th Cir.), cert. denied, 117 S. Ct. 180 (1996). "The defendant bears the burden of proving that his role in the offense was minor." **United States v. Atanda**, 60 F.3d 196, 198 (5th Cir. 1995).

We review the district court's application and legal interpretation of the sentencing guidelines *de novo*, **United States v. Domino**, 62 F.3d 716, 719 (5th Cir. 1995), and its findings of fact for clear error. **United States v. Hooker**, 997 F.2d 67, 75 (5th Cir. 1993). "A factual finding is not clearly erroneous as long as the finding is plausible in the light of the record as a whole." **United States v. Edwards**, 65 F.3d 430, 432 (5th Cir. 1995). After reviewing the record, we find plausible the district court's refusal to find that Morman was a minor participant. Accordingly, the district court committed no clear error.

21

Second, all Appellants argue that the evidence does not support the district court's application of a two-level increase in their respective sentencing offense levels for possession of a firearm. "The sentencing guidelines direct a sentencing court to increase the defendant's sentence by two levels whenever, in a crime involving the manufacture, import, export, trafficking, or possession of drugs, the defendant possessed a dangerous weapon." *United States v. Flucas*, 99 F.3d 177, 179 (5th Cir. 1996); see, U.S.S.G. § 2D1.1(b)(1). "Application Note 3 to § 2D1.1 explains that this enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."[6] *Flucas*, 99 F.3d at 179; and see *United States v. Mitchell*, 31 F.3d 271, 277 (5th Cir.), cert. denied, 115 S. Ct. 455 (1995). "The burden of proof in this respect is on the government under a preponderance of the evidence standard." *United States v. Sparks*, 2 F.3d 574, 587 (5th Cir. 1993), cert. denied, 114 S. Ct. 720, cert. denied, 114 S. Ct. 899, cert. denied, 114 S. Ct. 1548 (1994). "The Government may satisfy its burden of proving a connection between the weapon and the offense by showing that the weapon was found in the same location where drugs or drug

---

[6] In *Bailey v. United States*, 116 S. Ct. 501 (1995), the Supreme Court, construing 18 U.S.C. § 924(c)(1), held that the term "use" (of a weapon) requires the "active employment" of the weapon by the defendant. *Id*. at 505. Our Circuit has already held that *Bailey* does not apply to § 2D1.1 enhancements. *United States v. Castillo*, 77 F.3d 1480, 1499 n.34 (5th Cir. 1996).

22

paraphernalia are stored or where part of the transaction occurred." *Flucas*, 99 F.3d at 179.

> Neither the sentencing guidelines nor the case law requires that the Government prove a defendant had knowledge of a weapon's existence. The adjustment must be made when a weapon is found at the scene of the crime unless there is clear improbability that the weapon is connected to the offense.

*Flucas*, 99 F.3d at 179. "[S]entencing courts [in drug cases] may ordinarily infer that a defendant should have foreseen a co-defendant's possession of a dangerous weapon, such as a firearm, if the government demonstrates that another participant knowingly possessed the weapon while he and the defendant committed the offense." *Sparks*, 2 F.3d at 587, citing, *United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215 (5th Cir. 1990). The district court's determination that a weapon was present and that its possession by a co-conspirator was foreseeable is a factual finding reviewable for clear error.

In the instant case, it is undisputed that Demarco Morgan, Samuel Hall, and Raymond Kinsey pled guilty to carrying a firearm during, and in relation to, a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Morgan, Hall, and Kinsey were each involved in the conspiracy. The district court did not clearly err in finding that Morgan, Hall, and Kinseys' possession of a firearm was reasonably foreseeable to the other defendants as co-conspirators.

Finally, Ralph Green argues that the evidence does not support the district court's refusal to grant his motion to acquit.

23

Specifically, Ralph Green summarily asserts that the government did not prove, beyond a reasonable doubt, that he was involved in a conspiracy because he claims that the government's witnesses were incredible, unreliable, and their testimonies uncorroborated. He asserts that many of the witnesses were drug dealers whose testimonies were "substantially impeached by 'deals' with the government."

In a sufficiency review, we must determine whether viewing the evidence and the inferences therefrom in a light most favorable to the jury's guilty verdicts, a rational trier of fact could have found these defendants guilty beyond a reasonable doubt. *United States v. Payne*, 99 F.3d 1273, 1278 (5th Cir. 1996). In denying Ralph Green's motion for acquittal, the district court passed on the sufficiency of the evidence. We review the denial of the motion for acquittal *de novo*, applying the same standards as in a general sufficiency review. *Payne*, 99 F.3d at 1278; *United States v. Sanchez*, 961 F.2d 1169, 1179 (5th Cir.), cert. denied, 113 S. Ct. 330 (1992).

The elements of a drug conspiracy are: "(1) the existence of an agreement between two or more persons to violate narcotics law; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement." *Payne*, 99 F.3d at 1278; *United States v. Gonzalez*, 76 F.3d 1339, 1346 (5th Cir. 1996). "A jury may infer the elements of a conspiracy

24

conviction from circumstantial evidence: an agreement to violate narcotics law may be inferred from concert of action. Knowledge of the conspiracy may be inferred from a collection of circumstances." *Payne*, 99 F.3d at 1278; *United States v. Leal*, 74 F.3d 600, 606 (5th Cir. 1996) (internal quotations and citations omitted).

We have previously held that "non-credibility is generally not a sound basis for alleging insufficiency of the evidence; it is the jury's function to determine credibility." *Payne*, 99 F.3d at 1278; *United States v. Polk*, 56 F.3d 613, 620 (5th Cir. 1995). We have also held that, unless the testimony is incredible or insubstantial on its face, a guilty verdict may be supported by only the uncorroborated testimony of a coconspirator, even if the witness is interested due to a plea bargain of promise of leniency. *Payne*, 99 F.3d at 1278; *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994), cert. denied, 115 S. Ct. 1825 (1995). Ralph Green has pointed to no evidence in the record showing that the testimony in this case is incredible or insubstantial on its face, nor do we find any upon our own review. Accordingly, there is sufficient evidence to support the conspiracy conviction of Ralph Green. The district court did not commit error.

**7. Fast Food Receipt**

Defendants argue that the district court erred in admitting into evidence two government exhibits, namely: (1) a fast food

receipt from a San Antonio restaurant which law enforcement officials found within Mormon's possession when he was arrested (Exhibit 68A), and (2) an enlarged photocopy of that receipt (Exhibit 68B).  This evidence was important to the government's case because it placed Mormon in San Antonio (where the drug conspiracy was based) on the evening before his arrest.  Defendants argue that the district court should not have admitted this evidence because it was never effectively disclosed to the Defendants by the government.  While Defendants acknowledge that they were given an opportunity to generally review the government's documents, they argue that their opportunity to do so was hollow because the government neither specified the contents of Exhibits 68(A) and (B) on its disclosure list, nor indicated its significance.  For the following reasons, we find no error.

During the discovery process, the government voluntarily complied with FED. R. CRIM. P. 16(a)[7] and specifically listed, *inter alia*, items that the government intended to introduce at trial. Among the descriptions of the items disclosed was the following: "miscellaneous notes and papers found as the result of an August 17, 1993 traffic stop of Mormon."  It is not disputed that all of

---

[7]  In relevant part, Rule 16(a) requires the government, upon defendant's request, to disclose to defendant and make available for inspection, copying, or photographing any relevant written or recorded statements made by the defendant which is within the possession, custody, or control of the government.  FED. R. CRIM. P. 16(a).

the disclosed documents were made available to Defendants who reviewed them at the office of the United States Attorney.

The narrow issue presented for review is whether the government substantially complied with the discovery requirements of the Federal Rules of Criminal Procedure. *United States v. Elam*, 678 F.2d 1234, 1252 (5th Cir. 1982). "Rule 16, FED.R.CRIM.P., does not require that the prosecution disclose all the minutiae of its evidence, it does not require revelation of trial strategy; nor does the Rule require delineation of the government's case with total specificity." *Id*. The admission of evidence which has not been properly identified in any pretrial order or other procedure is largely a matter for the sound discretion of the trial judge. *Id*., citing, *Calamia v. Spivey*, 632 F.2d 1235 (5th Cir. 1980).

Under the circumstances of this case, where the government's exhibit list included a general reference to all of the disputed records, and those records were made available to the defense, the district court did not abuse its discretion in admitting those records into evidence. *Elam*, 678 F.2d at 1253. We find no error.


**8.  Jury Instructions**

Appellants argue that the district court abused its discretion when it refused to grant Appellants' proposed jury instructions concerning a government witness' immunity, credibility, and alleged drug addiction. The district court held that the issues of

27

immunity and credibility were already addressed in the charge, and that the evidence did not support an instruction concerning a witness' alleged drug addiction.

The trial court has broad discretion in formulating its charge, so long as the charge accurately reflects the law and facts of the case. *United States v. Allred*, 867 F.2d 856, 868 (5th Cir. 1989). A defendant is entitled to a correctly stated instruction, but not to his own particular language. *United States v. Davis*, 61 F.3d 291, 304-05 (5th Cir. 1995), cert. denied, 116 S. Ct. 961 (1996). "[A] district court may properly decline to give a requested instruction which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions. *Allred*, 867 F.2d at 868 (citations omitted). The defendant must show that the district court's instruction failed to correctly state the law. *Davis*, 61 F.3d at 304.

Having reviewed the district court's jury charge, we find that it was an adequate statement of the law. The district court's refusal to give the requested instructions was not in error.


**CONCLUSION**

For the aforementioned reasons, the judgment of the district court is, in all respects, **AFFIRMED.**

28